UNITED STATES DISTRICT COURT
*for the*
EASTERN DISTRICT OF NEW YORK

---------------------------------------x

UNITED STATES OF AMERICA

           *Plaintiff,*

      v.                                   11 Cr. 705-01 (JBW)


FRANK DiMATTINA,

           *Defendant*

---------------------------------------x


**NOTICE OF MOTION**

    **PLEASE TAKE NOTICE** that upon the annexed Affirmation of Lawrence H. Schoenbach, Esq., the Affidavit of Frank DiMattina, the 18 Affidavits of Witnesses, and the accompanying Memorandum of Law, Lawrence H. Schoenbach, attorney for the defendant Frank DiMattina, will move this Court (Weinstein, J.) at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York on the 26th day of March 2012, or as soon thereafter as counsel can be heard, for an Order vacating defendant's conviction and directing that a new trial be held pursuant to Rule 33 (b)(1) of the Federal Rules of Criminal Procedure, and for such other and further relief as to the Court seems just and proper.

Dated:  New York, New York
       March 16, 2012

Respectfully submitted,

LAW OFFICES OF
LAWRENCE H. SCHOENBACH, PLLC

By:

LAWRENCE H. SCHOENBACH, ESQ.
Attorney for FRANK DiMATTINA
111 Broadway, Suite 1305
New York, New York 10006
(212) 346-2400
schoenbachlawoffice@att.net

To:     AUSA Jack Dennehy, Esq. (Via ECF Only)

UNITED STATES DISTRICT COURT
*for the*
EASTERN DISTRICT OF NEW YORK

---------------------------------------x

UNITED STATES OF AMERICA

    *Plaintiff,*

   v.         11 Cr. 705-01 (JBW)


FRANK DiMATTINA,

    *Defendant*
---------------------------------------x

**AFFIRMATION OF ATTORNEY
IN SUPPORT OF DEFENDANT'S RULE 33
MOTION FOR A NEW TRIAL**

  **LAWRENCE H. SCHOENBACH, ESQ**., an attorney duly admitted before the bar of this Court, affirms, under the penalties of perjury, that the following facts, upon information and belief, are true.  The source of your Affirmant's information and the basis for his belief is a review of the Court records, the records on file in my office, conversations had with Mr. DiMattina's prior counsel, conversations had with my client, the defendant Frank DiMattina, and conversations had with the sixteen (16) witnesses whose Affidavits are annexed to this motion.

  1. This affirmation is respectfully submitted in support of defendant's motion for an Order, pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure, vacating the defendant's conviction and ordering a new trial in the interests of justice or, alternatively conducting an evidentiary hearing to determine the propriety of Mr. DiMattina's newly discovered evidence

(i.e. the alibi defense) and for such other and further relief as to this Honorable Court may seem just and proper.

Facts Relevant to the Motion for a New Trial

2.     On September 15, 2011 agents of the Federal Bureau of Investigation arrested Frank DiMattina at his catering business, Ariana's Grand, located in Woodbridge, New Jersey. Mr. DiMattina was charged in a complaint with four (4) counts of Hobbs Act extortion and a firearms offense.

3.     On October 13, 2011 Mr. DiMattina was indicted by a grand jury sitting in the Eastern District of New York and charged with the same four (4) counts of Hobbs Act extortions and one (1) firearms count as was originally charged in the complaint. The firearms count related to the Hobbs Act violation charged in Counts One and Two of the indictment. The matter proceeded to trial on January 3, 2012.

4.     After a three (3) day trial, of which 2½ days were devoted to taking testimony, the jury returned a verdict of guilty on Counts Two and Three of the indictment. Mr. DiMattina was acquitted of the charges in Counts One, Four and Five of the indictment.

5.     The two counts of conviction against Mr. DiMattina involve a business relationship with Walter Bowers, the man to whom Mr. DiMattina sold his Staten Island catering business in March 2010. According to Mr. Bowers' testimony, Mr. DiMattina threatened Mr. Bowers to withdraw Mr. Bowers' bid in a Staten Island school lunch program. The government's theory was that Mr. DiMattina was a competing bidder in the same school lunch program and that the defendant wanted Mr. Bowers out of the bidding so Mr. DiMattina presumably could win the contract.

6.     Of particular relevance to the issue presented by this motion for a new trial is that in the Complaint and the Indictment allege that the offenses charged in Counts Two (Hobbs Act extortion related to the school lunch program) and Three (weapons possession) both occurred "[o]n or about and between June 1, 2010 and September 1, 2010, both dates being approximate and inclusive." Given the very general dates to what was a very specific event in time, there was no way for the defendant to prepare an alibi defense, assuming he had one. To do so would have required Mr. DiMattina to account for each and every day of a three (3) month period of time.

7.     In order to determine a more precise date when the crime charged in Counts Two and Three occurred Mr. DiMattina's then-attorney filed with the Court a pre-trial motion for a Bill of Particulars. That motion sought, *inter alia*, the following regarding the charges in Counts Two and Three:

> The Government alleges in its Indictment that two topics constitute the basis of the charges – namely a school lunch contract bid and the payments related to the sale of a catering facility. In no way however is either subject matter criminal in nature. Moreover, the Indictment fails to state with any specificity not to mention sufficient specificity how such subject matters are related to the crimes alleged. The Indictment does not provide any guidance as to when, by whom, or under what circumstances each of the offenses was committed. Problematically, the school lunch allegations assert a time frame spanning three months, while the catering facility sale allegations purportedly span eight months. The Indictment is purposely devoid of specificities and occurrences during such months, doing no more than track the language of the statute while making empty assertions. The Defense is left to cipher through implications, not facts.

*See* Defendant's Bill of Particulars, at 6-7 (Document # 13), dated 10/25/11. Emphasis added.

8.     The government opposed Mr. DiMattina's motion for a Bill of Particulars. The Court denied the motion.

9.     At trial was the first time that the government, through the testimony of

3

the alleged victim Walter Bowers, identified with any particularity the date the extortion and firearm display occurred, as charged in Counts Two and Three, respectively. It was at that moment when the defendant and his attorney learned for the first time the specific date when this crime is alleged to have occurred. According to Mr. Bowers' sworn trial testimony the date he says Mr. DiMattina threatened him was on "Saturday, the last week in June (2010)." *See* Tr. 108, lines 16-17.[1] *See* also Tr. 166[2], lines 6-7. Mr. Bowers' then testified that Mr. DiMattina threatened him approximately 20 minutes before a party he was holding at his catering hall in Staten Island. *See* Tr. at 108, lines 18-20. Emphasis added.

10.     I have checked a calendar for 2010 and know that he last Saturday in June 2010 was June 26, 2010.

11.     I have spoken with Mr. DiMattina, as well as to others, including vendors, guests and employees regarding Mr. DiMattina's whereabouts on June 26, 2010. I have also reviewed various contracts and receipts that were recorded on that date. All show that Mr. DiMattina was at Ariana's Grand catering hall in Woodbridge, New Jersey from approximately 9AM that day until approximately 1AM the following day. Affidavits sworn under oath attesting to these facts are annexed to this motion.

---

[1]     Tr. refers to the transcript of the trial record

[2]     On cross-examination Mr. Bowers confirmed the Saturday timing of the alleged incident:

     Q:     And do you remember the date, this is what, the third week of June:

     A:     Let me think actually. Approximately probably the 25th of June, I think it was a Saturday -- it was a Saturday.

12.     I have also spoken with several employees and guests of Mr. Bowers' catering hall in Staten Island who were present at the Staten Island facility on June 26, 2010. All of those witnesses affirmatively that at no time while they were at the Staten Island catering facility did they ever see Mr. DiMattina. Of particular import is the sworn Affidavit of John Gorgoglione, a Valet at Mr. Bowers' catering hall who was working on June 26, 2010. At no time did Mr. Gorgoglione ever see Mr. DiMattina that day notwithstanding that this witness was working in the very place and at the precise time when and where Mr. Bowers claims to have been threatened. *See also* ¶ 21, *infra*. Affidavits sworn under oath attesting to these facts are annexed to this motion.

13.     Based on those Affidavits, contracts and receipts I believe that Mr. DiMattina has a credible, if not extraordinary, alibi defense that, had it been presented at trial to the jury, would have resulted in a different verdict on Counts Two and Three. This is particularly true where the government's primary, if not exclusive, direct evidence at trial of the crime was solely the testimony of Walter Bowers. Certainly, the government offered other evidence at trial – but all of it was to support the basic premise proffered by the witness and the government – of a one-on-one encounter between Mr. DiMattina and Mr. Bowers during which the defendant allegedly threatened the complainant with a gun. The overwhelming evidence of Mr. DiMattina's alibi categorically refutes the claim of such an event occurring in Staten Island at Ariana's catering hall on New Dorp Avenue on June 26, 2010 -- as Mr. Bowers said it did.

14.     Annexed to this Motion are a series of Affidavits and true copies of documents that conclusively establish that on June 26, 2010 Mr. DiMattina

5

was at his place of business in New Jersey for the entire day and evening. Another series of Affidavits also establish that Mr. DiMattina was not at Mr. Bowers' place of business on that day. Logic alone would tend to support this since, in the catering business, Saturday is the busiest day of the week and June is the busiest month. Defendant does not, however, rely on logic. He relies on witness accounts, documents and records to support his alibi.

15.     Specifically, attached hereto are eight (8) sworn Affidavits (not including one from the defendant) from Ariana's Grand employees and guests attesting to the fact that, on June 26, 2010, Mr. DiMattina was in New Jersey -- at the time he is alleged to have threatened Mr. Bowers. Virtually all recall June 26, 2010 in the context of two events held at the catering hall in New Jersey: a very large Pakistani or Indian wedding at which there were actually two parties, one in the morning and one that evening, and during which there was a problem with the Valets who were responsible for parking cars; and the St. John's University (Staten Island) "formal" held at Ariana's Grand that evening. Many of the younger employees of Ariana's Grand are students at St. Johns University and work at the catering hall on weekends to earn extra money.

16.     Additionally, attached hereto is the sworn Affidavit of Peter Basilio an employee of La Dolce Bakery in Staten Island. For the past approximately 10 years La Dolce Bakery has been delivering bread and pastries to Mr. DiMattina's various catering halls. On June 26, 2010 Mr. Basilio delivered breads and pastries to Ariana's Grand in New Jersey and, most importantly, he delivered them to Mr. DiMattina. He knows this because attached to Mr. Basilio's Affidavit is a true copy of a receipt of the bakery, dated June 26, 2010

that is initialed by both Mr. Basilio and Mr. DiMattina. According to Mr. Basilio's Affidavit, he made the delivery to Ariana's Grand at about noon that day, the same time he has been delivering goods to the New Jersey business since its opened operations 4 years ago.

17.     Also annexed is a sworn Affidavit from Anthony Mungo who, on June 27, 2010 (Sunday), hosted his daughter's Christening at Ariana's Grand in New Jersey. Mr. Mungo recalls being with Mr. DiMattina at the catering hall *the day before* the Christening (Saturday, June 26, 2010) because he had to bring the cake to the catering hall and it was Mr. DiMattina who escorted Mr. Mungo into the facilities' walk-in refrigerator. According to Mr. Mungo, there were no Sunday deliveries from the bakery from which he bought the cake so Mr. Mungo had to pick-up the cake the day before and get it to Ariana's Grand in time for the Sunday party. Attached to Mr. Mungo's Affidavit is a receipt from "Cake Chef" for the cake. The receipt clearly identifies a pick-up for the cake on or after 8AM on June 26, 2010. Mr. Mungo estimates that he was with Mr. DiMattina on June 26, 2010 sometime during the late morning, perhaps by 1030AM or 11AM. He estimates the time because it was right before a very large Indian wedding.

18.     Also annexed hereto are five (5) Affidavits from people who were at Ariana's of Staten Island, Mr. Bowers' catering hall, and who all attest that at no time while they were at the catering hall in Staten Island, did they ever see Mr. DiMattina on June 26, 2010.

19.     Three (3) of the Affidavits were from guests at the Staten Island catering hall who were attending parties on June 26, 2010. All knew Mr. DiMattina

7

personally. Two had booked their June 26, 2010 event with Mr. DiMattina prior to its sale to Mr. Bowers and had expected to see the defendant at their party. Both actually looked for Mr. DiMattina and were told by Mr. Bowers' assistant that Mr. DiMattina was not there; he had sold the business and was in New Jersey at his catering hall in New Jersey.

20.    Two other Affidavits are submitted with this motion. They are from employees of Ariana's of Staten Island; one a bartender and one a Valet. Both were working on June 26, 2010 and neither ever saw Mr. DiMattina that day at the Staten Island catering hall.

21.    Of critical importance is the sworn statement of the Staten Island Valet (John Gorgoglione) who was working at Mr. Bowers' catering hall on June 26, 2010. It is Mr. Gorgoglione's responsibility as a Valet to be at the entrance to the catering hall's parking lot (directly adjacent to the catering hall) so that he could greet the guests, take their car keys, and park their car. He would then have to park those cars in the very place where Mr. Bowers claimed he was threatened.

22.    Mr. Bowers described the place where the defendant allegedly threatened him. According to his testimony:

Q:    On this Saturday, where did you go with the defendant"

A:    We walked out of the front door, made a right, went about 60, 70 feet and there is a parking lot there and we started to walk down the parking lot.

Q:    Were you alone?

A:    I was alone

Q:    Was the defendant alone?

8

A:    The defendant was alone.

Q:    When you get to the rear lot, describe for the jury what happened.

A:    I got – what happens is there is a set of staircases that go upstairs to the roof. We passed that location, then there is another entrance that has two steps on it. So I actually sat down on the two steps and said to him: What's up? And he said to me: What did you do? You went into the bid? . . . Frank, he looked at me, picked up his shirt. He had a gun in his shirt, in his pants, his trousers, and he said to me: I'm telling you, you better pull out of the bid or there's going to be problems." Tr. at 109-110.

23.    The reason Mr. Gorgoglione's sworn statement is of particular importance is because at no time, particularly 20 minutes before a party did Mr. Gorgoglione ever see Mr. DiMattina. Mr. Gorgoglione knows Mr. DiMattina well because Mr. Gorgoglione worked as a Valet at the Staten Island catering hall when Mr. DiMattina owned it. According to Mr. Bowers this incident occurred twenty minutes before a party. If so, then Mr. Gorgoglione was in the very parking lot when this crime is alleged to have occurred. Moreover, in order to get into the parking lot Mr. Bowers and Mr. DiMattina would have passed directly in front of Mr. Gorgoglione's Valet position. The stairs at which Mr. DiMattina is said to have threatened Mr. Bowers are in the middle of the parking lot – right where Mr. Gorgoglione would be parking cars. Had Mr. DiMattina been in the Arian's parking lot 20 minutes before a party there then Mr. Gorgoglione would have seen him. That he did not is credible evidence that Mr. DiMattina was not at the time and place where Mr. Bowers said he was when Mr. Bowers claims the defendant threatened him.

24.    Annexed to my Affirmation is a true copy of a Google photograph of the parking lot at 96 New Dorp Avenue, Staten Island. I have been to that address and know, of my own knowledge, that the photograph is a true and accurate depiction of the parking lot adjacent to Ariana's catering hall on New Dorp

9

Avenue in Staten Island. The stairs that Mr. Bowers describe are clearly visible in the photograph and are situated in the middle of the parking lot, just past the stairwell leading to the roof, and adjacent to Ariana's catering hall of Staten Island.

25.     The information contained in this Affirmation and the annexed series of Affidavits and related receipts and documents, are newly discovered evidence as contemplated by Rule 33(b)(1). Clearly, all of the testimony and documents existed prior to trial. However, until Mr. Bowers testified at trial to the specific date of the crime alleged in Counts Two and Three, none of this evidence could, or would, be relevant to the defense of the case. Once Mr. Bowers put a specific date to the alleged crime, all of the evidence adduced in this motion became critically important – and newly discovered. Because the entire testimonial portion of the trial took only two days, and Mr. Bowers testified on the day before the close of testimony, there was no responsible way for Mr. DiMattina or his then-attorney to determine if the defendant had, in fact, a legitimate alibi for the date in question, or to collect the documents and secure witness testimony to prove that alibi.

20.     Having now determined, based on the newly discovered evidence, that Frank DiMattina had, in fact, a credible and viable alibi defense to the charges contained in Counts Two and Three, this Court is respectfully requested to grant the within motion, vacate the defendant's conviction on those counts, and order a new trial. Alternatively, defendant prays for an Order setting this matter for an evidentiary hearing for the Court to determine the evidence adduced by and within this motion.

10

**WHEREFORE**, your Affirmant prays for an Order granting the relief requested herein and for such other and further relief as to this Court may seem just and proper.6

Dated: New York, New York
      March 1, 2010


                 LAW OFFICES OF
                 LAWRENCE H. SCHOENBACH, PLLC

        By: _____

                 Lawrence H. Schoenbach, Esq.
                 Attorney for Frank DiMattina

11

Address **96 New Dorp Plaza**
Address is approximate



© 2012 Google

UNITED STATES DISTRICT COURT
*for the*
EASTERN DISTRICT OF NEW YORK


--------------------------------------x

UNITED STATES OF AMERICA

        *Plaintiff,*

    v.                                       11 Cr. 705-01 (JBW)

FRANK DiMATTINA,

        *Defendant*

--------------------------------------x


**MEMORANDUM OF LAW**
**IN SUPPORT OF FRANK DiMATTINA'S MOTION**
**FOR A NEW TRIAL**


*Introduction*

    This Memorandum of Law is respectfully submitted on behalf of Frank DiMattina, the above-captioned defendant, in support of his motion, pursuant to Rule 33 (b)(1), Fed. R. Crim. P., for an Order vacating his conviction in the above-captioned case and granting to the defendant a new trial. This motion is based upon the discovery of new evidence that, even with due diligence, could not have been discovered prior to trial. The evidence shows that Frank DiMattina could not, and did not, commit the crimes with which he was convicted. Had this evidence been presented to the jury it most certainly would have reached a different result.

Rule 33 provides, in pertinent part, that "a court on motion of a defendant may grant a new trial to him if required in the interest of justice.[1]

*Preliminary Statement*

Annexed to this motion are no less than fifteen (15) independent witness affidavits,[2] several with related documentation in the form of receipts and/or signed contracts, demonstrating that on June 26, 2010 Frank DiMattina could not have threatened Walter Bowers at his catering hall in Staten Island with (or without) a weapon -- because Mr. DiMattina was in New Jersey the entire day, from approximately 9AM until well after midnight the following day.

The Indictment charged that Mr. DiMattina committed the Hobbs Act extortion and related Weapon violation that are the subject of this motion "on or about and between June 1, 2010 and September 1, 2010, both dates being approximate and inclusive." Mr. DiMattina's then-counsel sought a pre-trial Bill of Particulars to determine the date when this incident was said to have occurred. The motion was denied.

The alibi defense that Mr. DiMattina now puts forth could not have been identified, prepared and/or presented to the jury at trial because until Mr. Bowers testified in court (on the day prior to the close of testimony) the government had not identified the specific date that Mr. Bowers claimed to have been threatened. It was only when Mr. Bowers testified that he was threatened

---

[1]    [1]The rule also provides that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed with 3 years after the verdict or finding of guilty

[2]    This list of witness affidavits does not include either counsel's Affirmation or Mr. DiMattina's sworn Affidavit.

by the defendant "on Saturday, the last week in June (2010)" did Mr. DiMattina learn the precise date of the charged in Counts Two and Three. *See* Schoenbach Affirmation, annexed hereto, ¶¶ 9-10.

Specifically, the alibi could not have been established until after an extensive investigation and interview of the many witnesses. Any investigation into an alibi was obstructed by the fact that the defense was unaware of, and could not obtain, the precise date of the allegations in Counts Two and Three prior to trial. The prosecution's disclosure of the precise date late in the trial did not allow the defense to conduct an investigation and marshal witnesses in anticipation of such evidence. The alibi is newly discovered evidence and is grounds for this Court to order that a new trial be held for Mr. DiMattina.

As demonstrated herein, since the newly discovered evidence could not, with due diligence, have been discovered before or during trial, is material and non-cumulative and its admission would likely lead to defendant's acquittal, a new trial is warranted.

## ARGUMENT

### A NEW TRIAL BASED UPON THE GROUND OF NEWLY DISCOVERED EVIDENCE IS WARRANTED

*Newly Discovered Evidence*

The jury's guilty verdict against Frank DiMattina and the facts adduced after that verdict, raise the most serious constitutional, legal and moral doubts about the propriety of that determination. As shown within, the newly discovered evidence require that the defendant's conviction be set aside and an Order be entered granting him a new trial.

Annexed hereto are essentially two groups of alibi witnesses:

•      those ten (10) witnesses who on June 26, 2010 were at Ariana's Grand catering hall in Woodbridge, New Jersey, including employees, guests, delivery men, and others, who know that Mr. DiMattina was at work in New Jersey from early in the morning on June 26, 2010 until after midnight on June 27, 2010;[3] and

•      those five (5) witnesses who on June 26, 2010 were at Walter Bowers' catering hall in Staten Island, including employees and guests and who never saw Mr. DiMattina at the catering hall in Staten Island. This includes at least one witness who was in the very place and time where Mr. Bowers claims to have been threatened by Mr. DiMattina.[4]

All of these witnesses, either individually or collectively, demonstrate that show that Mr. DiMattina was at work in New Jersey all day and night and was not in the place where Mr. Bowers claims the defendant was when Mr. Bowers claims to have been threatened.

While recognizing that "motions for new trials based on newly discovered evidence `are not held in great  favor,' *United States v. Catalano*, 491 F. 2d 268 (2d Cir.), *cert. denied*, 419 U.S. 825 (1974), courts have nonetheless created the mechanism to correct injustices to those wrongly convicted of crime, recognizing the fallibility inherent in any judicial process. The late Justice Frankfurter, while a professor of law at Harvard Law School, wrote:

> All systems of law, however wise, are administered through men, and therefore may occasionally disclose the frailties of men. Perfection may not be demanded of law, but the capacity to correct error of inevitable frailty is the mark of a civilized legal mechanism.  Grave injustices, as a matter of fact, do arise even

---

[3]      The Affidavits of these ten (10) witnesses are annexed hereto as follows:

Joseph Barrile (Exhibit B); Eric Frigiano (Exhibit C); Edmund Rivers (Exhibit D); Ilya Goussev (Exhibit E); Michael Falletta (Exhibit F); Matthew Forgione (Exhibit G); Peter Basillio (Exhibit H); Anthony Mungo (Exhibit I); and Nizat Kaiyoum & Ambkia D. Carew (Exhibit J).

[4]      The Affidavits of these five (5) witnesses are annexed hereto as follows:

Geraldine Habeeb (Exhibit K); Victoria Wall (Exhibit L); Maryann Honadel (Exhibit M); Anthony Scarlotta (Exhibit N) and John Gorgoglione (Exhibit O)

under the most civilized systems of law and despite adherence to
the forms of procedure intended to safeguard against them.

F. Frankfurter, The Case of Sacco and Vanzetti, University Library Ed., 1962.

*Legal Standard Required to Grant a New Trial*
*Based on Newly Discovered Evidence*

A new trial pursuant to Rule 33 based on newly discovered evidence may
be granted only upon a showing that the evidence could not with due diligence
have been discovered before or during trial, that the evidence is material, not
cumulative, and that admission of the evidence would probably lead to an
acquittal. *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007), quoting *United
States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980).

The Second Circuit has consistently held that the Federal Rules of
Criminal Procedure allow a district court, upon the defendant's motion, to grant
a new trial if the interest of justice so requires. The Second Circuit's standard
for this contains five elements: 1) the evidence be newly discovered after trial; 2)
facts are alleged from which the court can infer due diligence on the part of the
movant to obtain the evidence; 3) the evidence is material; 4) the evidence is not
merely cumulative or impeaching; and 5) the evidence would likely result in an
acquittal. *United States. v. Persico*, 645 F.3d 85, 108 (2d Cir. 2011) quoting
*United States v. Owen*, 500 F.3d 83, 87-88 (2d Cir. 2007).

*The Evidence Was Newly Discovered After Trial*

The alibi evidence was newly discovered after the trial. The fifteen (15)
witnesses who gave the sworn statements attached to this motion were not

5

known to have existed, and certainly had no relevant evidence to give, prior to trial. This is because, although requested by a motion for a Bill of Particulars, the precise date that the government alleged that this crime occurred was so broad as to be unknown and undiscoverable to the defense, and particularly so with regard to an alibi defense.

Mr. DiMattina learned the date, "the last Saturday in June," on the second day of a 2½-day trial. Even then he would have to consult a calendar to know the actual date. There was no time to investigate all of the witnesses that were subsequently discovered and who have given statements here. These witnesses were not known, nor could they have been known, to have relevant testimony or documentation prior to or at the time of trial. As such, the evidence offered in this motion is newly discovered evidence.

### The Alibi Could Not Have Been Discovered
### With Due Diligence Before Or During Trial

The alibi evidence could not have been discovered before trial because the defense did not know, and could not discover (despite his efforts), the precise date on which the alleged incident occurred.

Mr. DiMattina was convicted of Counts Two and Three of the indictment. The allegation in the indictment is that he possessed a gun and threatened Mr. Bowers with it some time between June 1, 2010 and September 1, 2010 -- a three-month span of time.  Mr. DiMattina, through his attorney, made a motion

6

for a bill of particulars and requested the precise date of the occurrence so that, *inter alia*, any alibi could be investigated. The motion for a Bill of Particulars wsa denied. The first time that the defense was aware of the precise date of the alleged incident was on the second day of a 2½-day trial. There was no opportunity to investigate the incident prior to trial because the defense could not investigate a possible alibi when the date was undiscoverable, and there was no possibility of investigating the alibi during trial when the precise date was revealed to the defense the day before the trial ended.

The defense attempted to discover any potential alibi through the motion for a bill of particulars and was denied that information. The three-month span of time in the indictment was far too expansive to investigate the whereabouts of Mr. DiMattina every day during that time. Certainly, Mr. DiMattina did what he could, within the parameters of the law, to discover whether there existed any potential alibi.[5] *See* DiMattina Affidavit, annexed hereto as Exhibit A, ¶¶ 20-22.

### The Alibi Evidence In This Case Is Material And Not Cumulative

The alibi evidence in this case is material evidence from disinterested witnesses and it is not cumulative. The test for materiality is that had the evidence been introduced at trial it would probably have produced a different

---

[5]     Due diligence has been defined in this Circuit as "ordinary diligence." *See e.g., United States v. Soblen*, 203 F. Supp. 542 (S.D.N.Y.), *aff'd* 301 F. 2d 236 (2d Cir.), *cert. denied*, 82 S. Ct. 1585 (1961).

7

result. *United States v. Silverman*, 430 F.2d 106, 119 (2d Cir. 1970).[6]

In this case the fifteen (15) sworn Affidavits are from disinterested witnesses whose statements corroborate one another, and establish that Mr. DiMattina was not at Mr. Bowers' catering hall on June 26, 2010. It is not only probable, but highly likely, that a multi-corroborated and documented alibi defense would yield a different result by the jury.

Included in this motion are the affidavits of fifteen (15) sworn witnesses in addition to the affidavit of Mr. DiMattina. Among those witnesses is Mr. Peter Basilio, an employee of a bakery on Staten Island, who delivered breads and pastries on June 26, 2010 to Mr. DiMattina at the defendant's New Jersey location at about noon that day. A true copy of the receipt of this delivery, signed by both Mr. DiMattina and Mr. Basilio is attached to the witness' affidavit. *See* Basilio Affidavit, annexed hereto as Exhibit H.

Also annexed are the Affidavits of Nizat Kaiyoum and his wife Ambika D. Carew who were at Ariana's Grand in the late morning of June 26, 2010. They were they to view the catering hall and to get a price quote for their upcoming wedding. They met personally with Mr. DiMattina who gave them a price quote

---

[6]    Evidence is "material . . . if there is a reasonable probability that . . . the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Underwood,* 932 F. 2d 1049, 1052 (2d Cir. 1991), citing *United States v. Bagley*, 473 U.S. 667, 682 (1985).

(in Mr. DiMattina's handwriting) and a personal tour of the facility. They were at the Woodbridge facility for approximately one hour and were with Mr. DiMattina virtually the entire time. True copies of the dated "Price Quote" from Ariana's Grand as well as other related documents are attached to the Kaiyoum/Carew Affidavit. *See* Kaiyoum/Carew Affidavit, annexed hereto as Exhibit J.

There is an affidavit from a guest who hosted his daughter's Christening party at Mr. DiMattina's Ariana's Grand in Woodbridge, New Jersey on Sunday, June 27, 2010 but who was at the defendant's catering hall the day prior (Saturday, June 26, 2010) to deliver a cake. According to Mr. Mungo, Mr. DiMattina was in New Jersey at Ariana's Grand at around 10:30 a.m. or 11:00 a.m. on June 26, 2010. *See* Mungo Affidavit, annexed hereto as Exhibit I.

Additionally, there are affidavits of various employees of Ariana's Grand who were all working, most of them all day and night, on June 26, 2010. All know and have attested to the fact that Mr. DiMattina was at his business in New Jersey throughout the day and night. *See e.g.* Affidavits of Joseph Barrile, annexed hereto as Exhibit B; Eric Frigiano, annexed hereto as Exhibit C; Edmund Rivers, attached hereto as Exhibit D; and Ilya Goussev, attached hereto as Exhibit E. Most of these employees recall the day specifically for two reasons:  there was a very large Indian party that day (and night) and all remember it because there was a problem with the Valets; also because June 26, 2010 was the night of the St. John's "formal," an annual party for the

9

fraternity at Ariana's Grand in Woodbridge, New Jersey. Many of the employees of Ariana's Grand are students at the university.

Because of the St. John's event to be held at Ariana's Grand that evening Matthew Forgione, a student at the university, knows and has attested to the fact that on June 26, 2010 he was at Ariana's Grand to give $4,800 directly to Mr. DiMattina. The money was the final payment for the party and needed to be paid in advance of the party so that the event could go on as scheduled. *See* Affidavit of Matthew Forgione, annexed hereto as Exhibit G.

Additionally, five (5) people have offered affidavits that show that Mr. DiMattina was <u>not</u> in Staten Island at Mr. Bowers' catering hall when Mr. Bowers claimed to have been threatened. Each of these witnesses know this because each were present at Mr. Bowers' catering hall, either as guests or employees, on June 26, 2010 and each knows, for varied reasons, that Mr. DiMattina was not there. All state that they sought out Mr. DiMattina that day but he was not there. Mr. DiMattina recognizes the possibility that these witnesses – save one -- could have been present at the Staten Island facility and simply not seen Mr. DiMattina. The proof of a negative fact does not, of necessity, prove the positive fact. This is however, not true of the witness John Gorgoglione.

John Gorgoglione is the Valet (parking attendant) at Mr. Bowers' catering hall who was working there on June 26, 2010. Mr. Gorgoglione knew Mr.

10

DiMattina because he had worked for Mr. DiMattina in Staten Island prior to the defendant selling the business to Mr. Bowers. Mr. Gorgoglione never saw Mr. DiMattina that day – despite the fact that Mr. Gorgoglione was in the parking lot at the very day, time and in the precise place where Mr. Bowers says this incident happened. Mr. Gorgoglione never saw Mr. DiMattina. *See* Gorgoglione Affidavit, annexed hereto as Exhibit O. Had the defendant been there as Mr. Bowers testified, Mr. Gorgoglione would have had to have seen him. This is not a large parking lot. One has only to look at the Google photograph of the parking lot depicting the very place where Mr. Bowers claims this crime occurred to know the truth of this statement. A true and accuracy copy of a Google photograph of the parking lot adjacent to Mr. Bowers' catering hall is annexed to the Schoenbach Affirmation.

This type of testimony, from disinterested witnesses and witnesses that were in the exact spot on the exact day where Mr. Bowers claims to have been threatened, would have been compelling evidence in Mr. DiMattina's favor. Surely, had the jury heard Mr. DiMattina's alibi defense it would have changed the outcome of the trial.

Finally, it cannot be said that the alibi evidence would be cumulative because there was no alibi testimony produced at trial.

### *The Alibi Evidence Here Would Have Likely Led To An Acquittal*

Alibi evidence that is corroborated by more than one witness, as here, is

generally strong evidence of innocence that can considerably alter the landscape of the trial. *Garcia v. Portuondo*, 459 F.Supp.2d 267, 289 (S.D.N.Y. 2006); *Espinal v. Bennett*, 588 F.Supp.2d 388, 401 (E.D.N.Y. 2008) holding that failure to investigate alibi rises to the level of a constitutional violation and constitutes ineffective assistance of counsel; *Bohan v. Kuhlmann*, 234 F.Supp.2d 231 (S.D.N.Y. 2002) holding that failure to present alibi testimony was constitutional violation and was not harmless error.

Mr. DiMattina's alibi is established for the entire day and night of June 26, 2010 by the testimony of more than one witness, in fact, many witnesses. It is also established by documentary evidence corroborating those witnesses. Additional witnesses show that the defendant was *not* at Mr. Bowers' catering hall on that day or at that time. Each of the affidavits included in this motion, over fifteen (15) witnesses, establish that Mr. DiMattina was <u>not</u> at Mr. Bowers' catering hall in Staten Island and confirm that he was at his own catering hall in New Jersey working during one of the busiest times of the year for his business. As Mr. DiMattina suggested, if not stated outright in his annexed affidavit: "Saturday is the busiest day of the week in the catering business and June is the busiest month. I was in New Jersey all day at work." *See* DiMattina" Aff'd at ¶¶ 9-10.

As all of the documentary and witness evidence show, Mr. DiMattina was in New Jersey and not Staten Island on June 26, 2010.

CONCLUSION

The alibi in this case is newly discovered evidence that the defense pursued with due diligence prior to trial. The evidence was material in that multiple witnesses and documents were available, but unknown to the defense at the time of trial, and such a defense would have substantially altered the outcome of the case.

Dated:        March 16, 2012

Respectfully submitted,

Lawrence H. Schoenbach, Esq.
Attorney for Frank DiMattina

13