UNITED STATES DISTRICT COURT
*for the*
EASTERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA

      *Plaintiff,*

v.                                       11 Cr. 705-01 (JBW)

FRANK DiMATTINA,

      *Defendant*

------------------------------------x

**Memorandum of Law**

This Memorandum of Law is respectfully submitted in response to the Court's two questions posed at the conclusion of the proceedings held on March 26, 2012. The two questions are identified below in bold with the defendant's response immediately following.

**1. Whether a district court, in sentencing a defendant for both an offense under 18 U.S.C. 924(c) and a related substantive crime, may reduce the sentence for the underlying crime in order to compensate for the mandatory minimum sentence required for the Section 924(c) offense?**

<u>Response to Question Number 1</u>

In *United States v. Chavez*, 549 F. 3d 119 (2d Cir. 2008), the Court of Appeals held that a sentencing court may not "conflate" a sentence in order to avoid the Congressional requirements of a mandatory minimum sentence. Specifically, the Second Circuit held that the severity of a mandatory consecutive sentence is an improper factor that a district court may not

consider when sentencing a defendant on related crimes. *See also United States v. Williams*, 599 F.3d 831, 834 (8th Cir.), *cert. denied*, 130 S. Ct. 2134 (2010). Moreover, the Supreme Court has recently twice declined to review this issue, *see Franklin v. United States*, 131 S. Ct. 1675 (2011) (No. 10-7435); *Calabrese v. United States*, 130 S. Ct. 1879 (2010) (No. 09-446). As such, "sentencing courts," although permitted by § 3553(a), after *Booker,* to deviate from an advisory-Guidelines-recommended range of imprisonment based on their policy disagreements with the Guidelines, "remain bound by the mandatory minimum sentences prescribed in the [statutes]." *Chavez,* at 136.

As such, Mr. DiMattina agrees that the Court may not impose a sentence that diminishes the mandatory minimum sentence that must be imposed by his § 924(c) conviction. Nothing in the law, however, precludes the Court from imposing a lower than recommended Guidelines sentence on the remaining count of conviction so long as the sentence is consistent with § 3553(a).

## 2. Whether the Court should stay execution of the defendant's sentence pending appeal to the Second Circuit Court of Appeals?

Response to Question Number 2

Title 18 § 3143(b) provides for "release of a defendant pending sentence or appeal" if a defendant can establish "by clear and convincing evidence" that he "is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)" and that the appeal "is not for the purpose of delay and raises a substantial question of law or fact likely to result" in reversal of the conviction or an order for a new trial.

2

At the close of the Mr. DiMattina's trial, in the context of a post-conviction bail hearing, this Court found "by clear and convincing evidence that the defendant is neither likely to flee nor pose a danger to any other person or the community." A copy of the Court's Order is annexed hereto. Having established the first two prongs of the three-part test outlined in § 3143, the only remaining issue to be decided is whether there exists a substantial likelihood that the defendant will succeed on the merits of his appeal. For the reasons below, Mr. DiMattina asserts that he will.

There are several viable, if not compelling, appellate issues that will result in the reversal of his conviction to wit:

    *a.*    *The Alibi Defense: Denial of the Rule 33 Motion for a New Trial / Ineffective Assistance of Counsel*

As this Court is well aware, Mr. DiMattina has, put forth in a Rule 33 motion a post-trial, substantive alibi defense of sixteen (16) witnesses. Mr. DiMattina asserts that the motion for a new trial was timely made because it was based on the newly discovered evidence of receipts, contracts, and witnesses whose existence became known to Mr. DiMattina only after he learned at trial the precise date and time of the offense.[1]

While defendant respectfully disagrees with the Court that the evidence of

---

[1] "Evidence that is known by the Petitioner, but unavailable at trial does not constitute '"newly discovered evidence."' *United States v. Jasin*, 280 F. 3d 355, 362 (3d Cir. 2002) (construing Fed. R. Crim. P. 33); *see also United States v. Locket*, 919 F. 2d 585, 591 (9th Cir. 1990)("newly discovered evidence" does not mean "newly available evidence" in the context of Fed. R. Crim. P. 41); *Libby v. Magnusson*, 188 F. 3d 43, 50 (1st Cir. 1999)(holding that, under section 2244(b)(2)(B)(i), courts look to when the petitioner knew of his alibi witness, not when the witness was ready to provide evidence);" . . . *Sistrunk v. Rozum*, L 1089557, 3-4 (E.D. Pa. 2009).

3

the alibi was newly discovered during trial, certainly it is an open question ripe for appellate review. No court, including the Second Circuit, has ruled that, for purposes of Rule 33, the date/time the crime was committed is "newly discovered evidence" requiring the due diligence to investigate a potential alibi defense contemplated by Rule 33.

Rather, as Mr. DiMattina has asserted, once he learned of the date/time of the crime charged, he did what he could to determine whether he had an alibi defense. As Mr. DiMattina acknowledged, his trial counsel never asked to adjourn the case to investigate the possibility of an alibi defense. While Your Honor may have provided to counsel a brief day or two adjournment of the trial to investigate the alibi defense, assuming the defendant knew during trial that he had one, that time might not, and probably would not, have been enough to properly present the defense to the jury. Certainly, Mr. DiMattina might have found some of the receipts and/or contracts and a few of the witnesses, but that is not the same as presenting all of the now sixteen (16) alibi witnesses at trial in a prepared, cogent and intelligent manner.

The Second Circuit has long recognized that putting the onus on the defense attorney for failure to either immediately recognize or evaluate belated evidentiary material, its inability to immediately adjust and modify its strategy, or request a continuance during trial has been repeatedly rejected by the Court of Appeals.

> We refuse . . . to infer from the failure of defense counsel, when surprised at trial, to seek time to gather other information on [the suppressed witness], that defense counsel would have by-passed the opportunity had the prosecutor apprised him of the [evidence] at a time when the defense

4

> was in a reasonable pre-trial position to evaluate carefully all the implications of that information. Given the time for preparation which counsel was denied by the belated disclosure, it seems to us counsel might have pursued a course of inquiry that would have resulted in ferreting out . . . relevant . . . information.

*Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir. 1974); *see also Leka v. Portuondo*, 257 F.3d 89, 102 (2d Cir. 2001). *See also Miller v. United States*, 14 A.3d 1094, 1110-1111 (D.C. Cir. 2011).

Further, "the prosecution is in no position to fault the defense for [an insufficient response at trial] when the prosecution itself created the hasty and disorderly conditions under which the defense was forced to conduct its essential business." *Leka*, 257 F.3d at 101. By not revealing the precise date and time of the offense until the alleged victim's testimony at trial the government should not now be heard to complain that the defense did too little, too late to present its alibi defense prior to the close of trial.

Although there is no case on point regarding the obligations of trial counsel faced with the specific facts presented here, there is ample Second Circuit authority regarding the obligations of the government and defense counsel who learn new, exculpatory evidence either shortly before or even during trial. *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) is most instructive on the issue.

*Gil* involved an alleged *Brady* violation in which the government turned over 3500 material to the defense one business day before trial. Contained in that 3500 material was a report exculpating the defendant but which counsel never found (in a mass of 2700 pages of 3500 material) until five months after trial. In overturning the District Court's denial of the Rule 33 motion, the

Second Circuit emphasized that:

> When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case.

*Id.,* at 106, *citing Leka,* 257 F.3d at 101.

In determining whether a late disclosure provided sufficient time for the defense to make adequate use of the information, the court in *Leka* noted that "the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use." *Leka,* 257 F.3d at 100.

Permitting the government to satisfy its discovery obligations by disclosing for example, *Brady* information on the eve of or during trial when an accused has only a theoretical opportunity to make use of it makes a mockery of the obligation.

> If a defendant could never make out a *Brady* violation on the basis of the effect of delay on his trial preparation and strategy, this would create dangerous incentives for prosecutors to withhold impeachment or exculpatory information until after the defense has committed itself to a particular strategy during opening statements or until it is too late for the defense to effectively use the disclosed information. It is not hard to imagine the many circumstances in which the belated revelation of *Brady* material might meaningfully alter a defendant's choices before and during trial: how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on. To force the defendant to bear these costs without recourse would offend the notion of fair trial that underlies the *Brady* principle.

*United States v. Burke,* 571 F.3d 1048, 1054 (10th Cir. 2009).

As such, the specific date and time of the charged offense is critical to the

defense of a case and its revelation during trial is insufficient time to determine if an alibi defense exists and to be able to present that defense at trial.[2] As the Court in *Leka,* warns, "[t]he opportunity for use under *Brady* is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought."

b.   *Ineffective Assistance of Counsel*

If this Court is correct in its analysis of the Rule 33 "due diligence" issue, particularly regarding defense counsel's failure to investigate the alibi defense once he learned at trial of the actual date of the crime charged (or to request an adjournment of the trial to accomplish that), then the failure amounts to ineffective assistance of counsel. Whether trial counsel was otherwise effective during the course of the representation is irrelevant. A lawyer owes a duty to his client to be diligent to and for his client at all phases of the representation. As all parties concede, no effort was made by Mr. DiMattina's then-attorney to postpone the trial, however briefly, to investigate the alibi defense and/or to present the defense at trial.

The Rule 33 motion for a new trial and the ineffective assistance of counsel are intertwined. Thus, if this Court or the Court of Appeals rule that defendant's Rule 33 motion for a new trial is defective because Mr.

---

[2]   Even the Federal Rules of Criminal Procedure contemplate a two-week period by which a defendant must provide to the government the names and addresses of its alibi witnesses. *See* Fed. R. Crim. P. 12.1(a)(2)(A)(B).

7

DiMattina's trial counsel was deficient in diligently investigating and offering Mr. DiMattina's alibi defense – or in timely making the Rule 33 motion within the 14 days contemplated by Rule 33(b)(2), then a Petition pursuant to 28 U.S.C. §2255 is inevitable. The very reasons for the denial of the Rule 33 motion are the compelling reasons for the granting of a habeas corpus petition.

c.  *Denial of the motion for a Bill of Particulars*

The denial of defendant's motion for a bill of particulars is reversible error where, in this case, it would have required the government to do precisely what it finally did at trial: identify with precision the date and time of the offense charged in Counts Two and Three of the indictment. Had the defendant been provided that information he could have done before trial what he was only able to do after trial: present a compelling, substantial alibi defense.

Defendant recognizes that federal courts routinely deny motions for bills of particulars. However, the routine practice cannot compensate for required information that a defendant needs to be properly defended.

> The two-fold purpose of a bill of particulars is 'to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, and minimize the danger of surprise at trial; and to enable him to plead has acquittal or conviction in bar of another prosecution for the same offense.

*United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973).

Thus, a defendant is entitled to those "central facts" that will permit him to conduct his own investigation into the charges against him and

thereby mount an adequate defense. *See United States v. Stroop* 121 F.R.D. 269, 272 (E.D.N.C. 1988).

In *United States v. Frye*, 202 U.S. Dist. LEXIS 4083, *3, *5-6 (W.D. VA 2002), the district court was faced with a similar issue as is presented here, namely the date and time of the discrete acts of criminal conduct alleged within the charged conspiracy. In requiring the government to disclose the date and location of the charged criminal conduct, the Court ruled that:

> The bare elements of a substantive offense coupled with the date the government alleges the offense occurred are ordinarily sufficient to avoid unfair surprise and permit the defendant to prepare his defense. In the present case, however, the government alleges a conspiracy that spans a three-year period. If the government offers evidence of discrete acts involving Frye evidencing his involvement in the conspiracy, Frye would be hard pressed to counter it at trial and mount an effective defense. <u>If Frye has a legitimate alibi, for instance, but does not learn the date of a sale in which Frye is alleged to have participated and have been present, he may be unable to prepare adequately and present that defense.</u> (Emphasis added).

As such, the denial of the bill of particulars which would have compelled the government to provide the specific date and time of the charged offense, was error which the Court can consider in determining the merits of Mr. DiMattina's appeal.

## Conclusion

Defendant has raised several issues that would warrant reversal of his conviction and the grant of a new trial. Whether the Rule 33 alibi evidence is properly denied is a close, if not novel, question. The same

can be said of the related ineffective assistance of counsel argument as well as the denial of the bill of particulars since all are inextricably intertwined with the alibi defense. This is the very definition of "substantial question of law . . . likely to result in reversal or an order for a new trial." *See* 3143(b)(1)(B)).

      Applying this standard, Mr. DiMattina meets the criteria for release on bail pending the Second Circuit's disposition of his appeal. Accordingly, it is respectfully requested that the Court enter an order continuing Mr. DiMattina's bail until resolution of his appeal to the Second Circuit.

                                              Respectfully submitted,

                                              Lawrence Schoenbach, Esq.
                                              Attorney for Frank DiMattina

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

FRANK DIMATTINA,

Defendant.

ORDER

11-CR-705



JACK B. WEINSTEIN, Senior United States District Judge:

Based upon the findings and reasons stated on the record at the hearing conducted today, there is clear and convincing evidence that the defendant is neither likely to flee nor pose a danger to any other person or the community. 18 U.S.C. § 3143(a)(2)(B); *see* Tr. of Post-Conviction Bail Hr'g, Jan. 6, 2012. In the interest of justice, because of the forty employees who depend upon the defendant's catering business for their employment, incarceration is not desirable.

Sufficient steps have been taken under 18 U.S.C. § 3142(c) to ensure the safety of individuals and the community and the defendant's continued appearance in court.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: January 6, 2012
Brooklyn, New York