**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

– against –

**FRANK DIMATTINA,**

   **Defendant.**

**AMENDED MEMORANDUM, ORDER, &**
**STATEMENT OF REASONS**

**11-CR-705**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 0 8 2012 ★

BROOKLYN OFFICE

**Appearances:**

For the defendant:    Lawrence H. Schoenbach
                      111 Broadway
                      Suite 1305
                      New York, NY 10006

                      Michael J. Ryan
                      Conigatti & Ryan, LLP
                      67 New Dorp Plaza
                      2nd Floor
                      Staten Island, NY 10306

For the government:   Jack Dennehy
                      United States Attorney's Office
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, NY 11201-1820

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.   Introduction.............................................................................................................. 2

II.  Facts ........................................................................................................................ 4



III.   New Trial Not Permitted ................................................................................................ 8

IV.   Sentence ........................................................................................................................ 12

   A.   Guidelines Calculations ............................................................................................. 13

   B.   Incarceration ............................................................................................................. 13

      1.   Count Three ........................................................................................................... 13

      2.   Count Two ............................................................................................................. 13

   C.   Fine, Special Assessment, and Supervised Release ..................................................... 17

V.   Release Pending Appeal Is Warranted .......................................................................... 18

   A.   Power of District Courts to Grant Release Pending Appeal ......................................... 18

      1.   Statutory Language ................................................................................................. 18

      2.   Legislative History ................................................................................................. 20

      3.   Interpretations by Other Courts of Appeals ............................................................. 21

      4.   Second Circuit Case Law ........................................................................................ 23

      5.   Plain Language and Legislative History Seems to Forbid Release by District Court 25

      6.   Weight of Precedents Allowing Release Followed .................................................... 26

   B.   Exceptional Reasons Merit Release ............................................................................ 27

      1.   18 U.S.C. § 3143(b)(1) Factors Are Satisfied ........................................................... 28

      2.   Case Presents Extraordinary Circumstances ............................................................ 28

VI.   Conclusion ...................................................................................................................... 31

## I.   Introduction

This memorandum deals with three issues: First, when can a new trial be granted by a trial court on the basis of alibi evidence after a jury verdict of guilty, where the failure to present that evidence at trial raises constitutional questions? *See* Part III, *infra*.   Second, what is the appropriate sentence for the defendant? *See* Part IV, *infra*.   Third, can bail pending decision on appeal be granted by a trial court, even though the statute seems to grant this power only to an appellate court, if Second Circuit case law allows release by the trial judge, and justice and

sensible administration of the criminal law encourage granting bail by the trial court? *See* Part V, *infra*.

On January 6, 2012, following a three-day trial, defendant Frank DiMattina was convicted of extorting Walter Bowers, causing him to withdraw his bid for a school lunch contract at a Catholic high school in Staten Island and of using a firearm in connection with that crime. More than three months after the verdict, he moved for a new trial on the basis of newly discovered evidence. *See* Defs.' Mot. for a New Trial Under Rule 33(b)(1), Doc. Entry 70, Mar. 16, 2012. He contends that he was not aware of the date of the crime prior to trial, but that Bowers' testimony, which was given on the first day of the trial, establishes that the extortion occurred on June 26, 2010. He presented sworn affidavits from eight witnesses, as well as his own affidavit, to establish that he had an airtight alibi.

Oral argument was held on March 26, 2012. As explained in Part III, *infra,* because evidence of the alibi could have been obtained and presented during the trial, it is not "newly discovered" as required by Rule 33 of the Federal Rules of Criminal Procedure. While the failure to discover and present this alibi might be the basis of an ineffective assistance claim on direct appeal or on collateral attack, it did not justify granting a new trial prior to sentencing.

Sentencing was adjourned to March 30, 2012 to permit further briefing on two issues: 1) whether the court could consider the mandatory minimum of five years required by Count Three in sentencing the defendant on Count Two; and 2) whether the court should grant a stay of the sentence and permit release on bail pending appeal.

DiMattina is now sentenced to five years of incarceration on Count Three in accordance with the mandatory minimum. *See* Part IV(B), *infra*. In reliance on the factors enumerated in 18

3

U.S.C. § 3553(a), one year and one day of incarceration on Count Two is imposed, to run consecutively, to be followed by three years of supervised release.  Because no consideration could be given to the term of incarceration imposed on Count Three in sentencing the defendant on Count Two, *see* Part IV(C), *infra*, the total sentence of six years and one day is even more excessive than the mandatory minimum requires.  A $200 special assessment was imposed.  A fine of $10,000 was levied.  The defendant will forfeit five lawfully-possessed firearms confiscated by the government upon his arrest.

Defendant will be released pending his appeal.  *See* Part V, *infra*.  Federal law mandates detention of individuals convicted of violent crimes, including extortion, pending appeal.  18 U.S.C. § 3143.  The language of the relevant statute appears to provide only an appellate court with the ability to exempt the defendant from this rule on the basis of "extraordinary reasons." 18 U.S.C. § 3145(c).  Nevertheless, the court will follow the majority of courts—including the Court of Appeals for the Second Circuit—which have found that a district court may grant bail pending appeal.

The substantial questions raised on the motion for a new trial may warrant reversal on appeal or a successful collateral attack, leading to a new trial.  DiMattina's personal circumstances are such that incarceration may impose unique hardships on his family and many of his employees.  These exceptional reasons plus satisfaction of other conditions weigh against defendant's incarceration pending appeal, and warrant granting release on bail.  *See* Part V, *infra*.

## II.    Facts

The crimes alleged in this case arise out of a business transaction between the defendant and Walter Bowers.  In March 2010, DiMattina sold Bowers a catering hall in Staten Island,

4

New York. Def.'s Pre-Sentence Investigation Report ¶ 2 ("PSR"). It was called Ariana's, after the defendant's eldest daughter. As part of the sale, DiMattina agreed that Bowers could use the name Ariana's for a limited period of time. *Id.* ¶ 2.

The defendant continues to operate two other restaurants—one in Staten Island, New York and one in Woodbridge Township, New Jersey—under variations of the Ariana's name (Ariana's Loft and Ariana's Grand, respectively). *Id.* ¶¶ 2, 57-58. He and Bowers are engaged in civil litigation in state court over Bower's continued use of the name Ariana's beyond the contractual period and his failure to pay the full price for the catering hall.

In October 2011, the defendant was charged with four counts of Hobbs Act extortion: extortion (Count Two) and conspiracy to commit extortion (Count One) in connection with a school lunch contract bid from Bowers, and extortion (Count Five) and conspiracy to commit extortion (Count Four) in connection with payments for the sale of the catering hall to Bowers. *See* Indictment, Doc. Entry 11, Oct. 13, 2011. He was also charged with using a firearm in connection with the school lunch contract extortion (Count Three). *Id.*

Both the complaint and the indictment alleged that the school lunch contract extortion and the use of the firearm occurred "[o]n or about and between June 1, 2010 and September 1, 2010, both dates being approximate and inclusive." Sealed Compl., Doc. Entry 1, Sept. 15, 2011; Indictment, Doc. Entry 11, Oct. 13, 2011.

On October 25, 2011, defendant moved for a bill of particulars, seeking, among other things, to force the government to state with more specificity when the alleged extortions occurred. *See* Def.'s Mot. for a Bill of Particulars 6-7, Doc. Entry 13, Oct. 25, 2011 ("The Indictment does not provide any guidance as to when . . . the offenses w[ere] committed.

5

Problematically, the school lunch allegations assert a time frame spanning three months . . . . The Indictment is purposely devoid of specificities and occurrences during such months . . . .").

Defendant's motion was denied. Following the general practice of this court, the United States Attorney in effect turned over its complete file to aid the defendant in preparing for trial. At the hearing for the instant motion, the government credibly averred that, in doing so, it revealed everything it knew about the date of the alleged incident. *See* Tr. of Sentencing Hr'g, Mar. 30, 2012. Bills of particulars under this district's generous discovery procedures are usually redundant.

Trial began on January 3, 2012. *See* Doc. Entry 57, Jan. 3, 2012. On January 4, Bowers took the stand, testifying as follows: DiMattina was a competing bidder on a contract for a school lunch program at a local Catholic high school. On a "Saturday, the last week in June [2010]," DiMattina approached Bowers at Ariana's. *See* Trial Tr. 108:16-17, Jan. 4, 2012; *see also id.* 166:6-7 (stating that the extortion occurred "[a]pproximately the 25[th] of June, I think it was a Saturday—it was a Saturday"). DiMattina asked Bowers to step outside and speak to him. He then led Bowers to an alley behind the catering hall, where they were met by an unidentified accomplice of the defendant. *Id.* at 108:16 – 110: 11. To induce Bowers to withdraw his bid, DiMattina threatened him. *Id.* 110:15 – 110:21. Demonstrating the seriousness of this demand, DiMattina lifted his shirt to reveal a gun stuck in his waistband. *Id.* 110:15 – 111:3. Bowers identified one of the guns seized from the defendant when he was arrested as the gun he saw. *Id.* 111:11 -115:5. DiMattina then instructed his accomplice, "Take a good look at this kid [Bowers]. You are going to come back here and kick his ass if he doesn't get out of the bid." *Id.* 110:19-23. He also told Bowers to tell Lawrence Chiarappo, Bowers' business partner, that he would burn Chiarappo's bagel stores down if the bid were not withdrawn. *Id.* 117:13-14.

6

Defendant now contends that he and his attorney first learned the exact date of the claimed extortion through Bowers' testimony. The defense did not move for a continuance to obtain any alibi witnesses—a delay which would have been granted by the court.

Bowers' testimony was corroborated by the testimony of several other witnesses. Father Michael P. Reilly, the priest in charge of the bidding process for the school lunch program, testified that Bowers told him, shortly after the Saturday in question, that he wished to withdraw his bid because Bowers was afraid following a "visit" he had received. *Id.* 239:20 – 240:1. Chiarappo testified that, while he was not present during the meeting with the defendant, he saw Bowers immediately after the encounter. *Id.* 250:21 – 251:6. At that time, Bowers described the defendant's threat regarding the bagel stores. *Id.*

On January 6, 2012, two days after Bowers' testimony, the jury returned a verdict of guilty on Counts Two and Three of the indictment. *See* Doc. Entry 63, Jan. 6, 2012. He was acquitted of the remaining charges. *Id.*

Defendant's current attorney, who was not his counsel at trial, points out that the last Saturday in June 2010 was the 26th. Aff. of Attorney Lawrence H. Schoenbach in Supp. of Def.'s Rule 33 Mot. for a New Trial ¶ 10, Doc. Entry 70, Mar. 16, 2012. He has submitted the affidavits by the defendant and eight other witnesses, along with supporting documents, substantiating the contention that DiMattina was at Ariana's Grand catering hall in Woodbridge, New Jersey from approximately nine a.m. on June 26, 2010 to one a.m. the following day— during which period the alleged threat was made. *See* Defs.' Mot. for a New Trial Under Rule 33(b)(1) Ex. A (Affidavits), Doc. Entry 70, Mar. 16, 2012. Additional affidavits from employees

7

and guests of Bowers establish that the defendant was not at Ariana's in Staten Island on the date
in question. *Id.*

## III.    New Trial Not Permitted

Federal Rule of Criminal Procedure Rule 33 provides that "upon the defendant's motion,
the court may vacate any judgment and grant a new trial if the interest of justice so requires."
Fed. R. Crim. P. Rule 33(a).  Since this motion was filed more than fourteen days after the
verdict, it must be grounded on newly discovered evidence.  Fed. R. Crim. P. Rule 33(b)(1)
("Any motion for a new trial grounded on newly discovered evidence must be filed within 3
years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a
motion for a new trial until the appellate court remands the case."); Fed. R. Crim. P. Rule
33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered
evidence must be filed within 14 days after the verdict or finding of guilty.").

A motion for a new trial—particularly one made more than fourteen days after trial—
may be granted "only *in the most extraordinary circumstances.*" *United States v. Spencer,* 4 F.3d
115, 118 (2d Cir. 1993) (emphasis in original); *see also United States v. Gordils*, 982 F.2d 64, 72
(2d Cir. 1992) ("We have explained that a district court must exercise great caution in
determining whether to grant a retrial on the ground of newly discovered evidence, and may
grant the motion only in the most extraordinary circumstances."). "The ultimate test is whether
letting a guilty verdict stand would be a manifest injustice." *United States v. Canova*, 412 F.3d
331, 349 (2d Cir. 2005) (internal citations and quotations omitted).

Where the defendant relies on newly discovered evidence, the motion may only be
granted if the defendant can show that: "(1) the evidence be newly discovered *after* trial; (2) facts

8

are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007) (emphasis added). The Court of Appeals for the Second Circuit has emphasized that evidence must be "newly discovered," not simply "newly available." *Id.* at 89.

Due diligence has not been exercised if the defendant or his counsel could have, without unusual effort, acquired the evidence before or during the trial. *See United States v. Alessi,* 638 F.2d 466, 479 (2d Cir. 1980) (holding that due diligence was not exercised; "[s]ince appellant was apparently aware of the [evidence] during trial he could just as easily have obtained it then as after his conviction"); *see also Siddiqi v. United States*, 98 F.3d 1427, 1435 (2d Cir. 1996) (stating that trial counsel did not act with due diligence where the evidence "could have been produced in response to a properly framed subpoena"). There is an obligation to explore all matters that could be at issue at trial before trial's end. *See Canova,* 412 F.3d at 349 ("[Defendant]'s assertion that he had no reason to procure this evidence for trial because he had not anticipated certain government tactics and arguments is unconvincing. The evidence in question all pertained to matters that [he] knew would be at issue at trial, even if he didn't know the government's exact position on these matters."). Where a "defendant knew or should have known, that [a witness] could offer material testimony as to the defendant's role in the charged crime, the defendant cannot claim that he 'discovered' that evidence only after trial." *Owen*, 500 F.3d at 91; *see also United States v. Middlemiss*, 217 F.3d 112, 122-123 (2d Cir. 2000) (holding that district court did not abuse its discretion in refusing to grant a new trial where "defense counsel knew about the witness and could have investigated his possible testimony"); *United States v. Malpeso*, 17 Fed. Appx. 23, 25-26 (2d Cir. 2001) (holding that defendant failed to

9

exercise due diligence in identifying alibi testimony; "the identity of [the witness], a former girlfriend, was known to [the defendant] prior to trial and an individual exercising due diligence would have spoken to close friends or girlfriends at the time of a charged crime to determine whether an alibi defense was available").

A defendant's lack of knowledge regarding the date of the alleged crime before trial does not excuse his lack of diligence in marshaling alibi witnesses once he becomes aware of that date during trial. In *United States v. Pucco,* for example, the defendant "did not know until the first day of the trial that the government would claim that [he] attended a conspiratorial meeting on January 11th." 338 F. Supp. 1252, 1254 (S.D.N.Y. 1972), *aff'd* 461 F.2d 846 (2d Cir. 1972) (table). Nevertheless, at trial he sought to establish an alibi, producing a number of witnesses who testified in support of that claim. *Id.* at 1253. Following his conviction, he moved for a new trial, seeking to present further testimony to corroborate his alibi. *Id.* He argued that, because he was unaware before trial of the date of the alleged crime, he "could not marshal his witnesses in anticipation of such evidence." *Id.* at 1254. The court found that this additional testimony did not merit a new trial because the defendant failed to act with due diligence in locating it:

> Even if the affidavits of the proposed witnesses are to be believed, the defendant must have known at the time of trial of their presence with him in Maryland on the critical "alibi night" of January 11th. There is no showing that they were unavailable to defendant before or during the trial. "Yet the defense never sought to subpoena [them] or to have the government produce [them], or to have the case adjourned until [they] could be located." *United States v. Lanza,* 329 F.2d 422, 423 (2d Cir. 1964).

*Id.* at 1255.

The affidavits and other evidence now submitted by the defendant in this case might have established to a jury's satisfaction that the defendant was not at Ariana's in Staten Island on June

26, 2010. Whether this evidence would lead to an acquittal need not be explored, however, since DiMattina has failed to establish that it could not have been produced during trial.

Whether the defendant could have identified a potential alibi defense before trial is a matter in dispute. The government argues that, before trial, defendant was presented with *Jencks* materials that made it clear that the crime occurred on a Saturday sometime after the victim placed his bid in June 2010 and shortly before the bid was withdrawn. *See* Gov't Mem. of L. in Opp. to Def.'s Rule 33 Mot., Doc. Entry 73, Mar. 22, 2012. Defendant responds that other 3500 material indicated that the extortion occurred in July or August 2010, and that he could not adequately prepare an alibi defense in advance of trial because the date range indicated by the indictment and pre-trial discovery was too ambiguous. Reply Mem. in Supp. of Frank DiMattina's Mot. for a New Trial 5-6, Doc. Entry 75, Mar. 23, 2012. The government has credibly asserted that it revealed everything it knew about the date of the alleged incident prior to trial. *See* Tr. of Sentencing Hr'g, Mar. 30, 2012.

Even if the defendant did not know the exact date of the claimed extortion prior to trial, he became aware of it when Bowers testified on the first day. He declares, in his sworn affidavit, that "[o]nce Mr. Bowers testified at trial that the date of the alleged incident was 'the last Saturday in June, 2010' (i.e., June 26, 2010) – I knew I could not have been at the place where Mr. Bowers said I was and/or committed this crime." *See* Defs.' Mot. for a New Trial Under Rule 33(b)(1) Ex. A (Aff. of Frank DiMattina ¶ 22), Doc. Entry 70, Mar. 16, 2012.

DiMattina's defense attorney could have consulted with his client regarding his whereabouts on that day and if there were any potential alibi witnesses—as apparently was the case in *Pucco*. There is no evidence that any of the affiants whose testimony is offered in

11

support of the motion were unknown to the defendant at the time of trial. A number of them are
the defendant's employees or business associates. Nor is there any showing that any were
unavailable to testify at trial. The defendant was fully aware, while the trial was still ongoing,
that an alibi defense was available. No motion for a continuance to obtain alibi witnesses was
made.

Since the alibi evidence could have been discovered and produced by defendant during
the pendency of the trial, there is no power in this court to grant a new trial on this post-verdict
motion. *Dodd v. United States,* 545 U.S. 353, 359 (2005) ("[W]hen the statute's language is
plain, the sole function of the courts . . . is to enforce it according to its terms." (alteration in
original) (internal quotation marks omitted)); *Tyler v. Cain,* 533 U.S. 656, 663 n. 5 (2001)
("[Courts] do not have license to question [legislative] decision[s] on policy grounds."). While
trial counsel's failure to present this defense may raise Sixth Amendment concerns, Rule 33 may
not be used to raise ineffective assistance claims. *United States v. Dukes*, 727 F.2d 34, 39 (2d
Cir. 1984).

## IV.    Sentence

The specific reasons for the sentence "state[d] in open court" are set forth below. *See,
e.g.,* 18 U.S.C. § 3553(c); *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006); *see also
United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006) (stating that a sentencing court
must provide "a simple, fact-specific statement explaining why the guidelines range did not
account for a specific factor or factors under § 3553(a)"); *United States v. Cavera*, 550 F.3d 180,
193 (2d Cir. 2008) (stating that the court should demonstrate that it "considered the parties'
arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority"
(internal quotations and alterations omitted)).

12

## A. Guidelines Calculations

The defendant's total offense level is twenty-two and his criminal history category is I. Calculation of the total offense level included a two-point enhancement for defendant's role as the organizer of the criminal activity. The evidence at trial was that the defendant led Bowers to an alley outside of Ariana's in Staten Island, New York, where they were met by DiMattina's accomplice. Defense counsel contends that there is no evidence showing that the defendant, not the accomplice, was the organizer or leader. The argument does not account for the fact that DiMattina directed the accomplice to harm Bowers if he did not withdraw from the bid. Bowers' testimony shows a man in full control of the situation, organizing the illegal activities of at least one other person. It is apparent that the defendant himself organized the threat in order to obtain a personal advantage in his commercial activities.

## B. Incarceration

### 1.Count Three

On Count Three, the firearm charge, a term of imprisonment of not less than five years is mandatory. 18 U.S.C. § 924(c)(1)(A)(i). The term imposed must run consecutively to the term imposed on the other count. *See* 18 U.S.C. § 924(c)(1)(D); U.S. Sentencing Guidelines Manual § 5G1.2(a). "[A] district court must impose a statutorily mandated sentence even if the court would reach a different determination if it considered only § 3553(a)." *United States v. Chavez*, 549 F.3d 119, 135 (2d Cir. 2008) (noting that statutory minimum sentences are in "tension with section 3553(a), but that very general statute cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress").

### 2.Count Two

13

On Count Two, the extortion charge, the guidelines range of imprisonment is between forty-one and fifty-one months. The offense carries a maximum term of imprisonment of twenty years. 18 U.S.C. § 1951(a). The guidelines range of the fine is from $7,500 to $75,000. U.S. Sentencing Guidelines Manual § 5E1.2(c)(3).

Consideration of the five-year mandatory minimum to be imposed on Count Three is not permitted, but attention must be given to the sentencing factors listed under 18 U.S.C. § 3553(a). In light of these factors, a sentence of one year and one day is "sufficient but not greater than necessary." 18 U.S.C. § 3553(a).

### a.   Consideration of Mandatory Minimum Precluded

Section 924 does not provide guidance on what consideration, if any, a sentencing court may give to the minimum sentence it mandates in determining the total sentence to be imposed on all counts. It states:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, *in addition to the punishment provided for such crime of violence* . . . be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A) (emphasis added). While 18 U.S.C. § 924(c)(1)(D) provides that no sentence imposed under it "shall run concurrently with any other term of imprisonment imposed on the person," it does not expressly prohibit a court from considering the length of the term imposed under a § 924(c) count when determining what overall sentence is "sufficient but not greater than necessary" as mandated by 18 U.S.C. § 3553(a). Nor is § 924's requirement that the

14

firearms sentence must run consecutively to any other term imposed, on its face, at odds with consideration of the factors mandated by § 3553 and the sufficiency of the sentence as a whole.

The Court of Appeals for the Second Circuit has stiffened the effect of the mandatory minimum by holding that a court is not "authorized to impose a shorter term for [one count] in light of the severe consecutive prison term it was required to impose on [another count]." *Chavez*, 540 F.3d at 133.

> [A] sentencing court is required to determine the appropriate prison term for the count to which the § 924(c) punishment is to be consecutive; and if the court reduces the prison term imposed for that underlying count on the ground that the total sentence is, in the court's view, too severe, the court conflates the two punishments and thwarts the will of Congress that the punishment imposed for violating § 924(c) be "addition[al]" and "no[t] ... concurrent[ ]."

*Id.* at 135 (alterations in original). The sentence on the underlying count must be determined independently and without consideration of the additional mandatory minimum imposed by § 924(c).

In his supplemental brief on this question, defendant concedes that *Chavez* prevents the court from considering the application of the mandatory minimum on Count Three in determining its sentence on Count Two. *See* Def.'s Mem. of Law on Resp. to Court's Questions 2, Doc. Entry 77, Mar. 27, 2012. Nevertheless, the factors articulated in 18 U.S.C. § 3553(a) remain relevant to DiMattina's sentencing for Count Two.

The often unnecessary and harsh result of *Chavez* has the effect of pushing many sentences far above what 18 U.S.C. § 3553(a) would otherwise require. In light endemic overpunishment, *Chavez* should be overruled.

**b. Section 3553(a) Factors Merit a Below-Guidelines Sentence**

15

The sentence imposed must be "sufficient, but not greater than necessary" to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In determining what sentence is appropriate, these purposes—as well as factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant"—must be considered. 18 U.S.C. § 3553(a)(1); *see generally* 18 U.S.C. § 3553(a).

Defendant was convicted by a jury of serious crimes. What was essentially a civil dispute between the defendant and the victim over the sale of a catering hall spilled over into serious criminal conduct. The evidence at trial showed that, when he learned that Bowers had entered a competing bid for the school lunch contract, he showed up at Bower's place of business with an accomplice and threatened his business rival with a gun in order to induce him to withdraw the bid. While the defendant may have felt wronged by Bower's continued misuse of the Ariana's name and his failure to pay a debt, the resort to violence to resolve business disputes cannot be condoned.

Nevertheless, the "the history and characteristics of the defendant" merit a below-guidelines sentence on this charge. *See* 18 U.S.C. § 3553(a)(1). This is the defendant's first criminal conviction. PSR ¶ 35. He has no substance abuse history and has been continuously employed since his graduation from high school in 1985. *Id.* ¶¶ 54-63. A hardworking businessman, he currently operates two catering halls which collectively employ approximately sixty people. Tr. of Sentencing Hr'g, Mar. 28, 2012. Together with his wife of nearly nineteen years, Marie-Elaina, he is raising three children. *Id.* ¶ 45.

16

In light of this history, the defendant's crime seems to have resulted from aberrant behavior. Supporting this conclusion are numerous letters attesting to his good character and many acts of charity. *See* Def.'s Sentencing Mem., Doc. Entry 71, Mar. 19, 2012.

DiMattina's family will suffer emotionally and financially from his absence during his long incarceration. *See* PSR ¶¶ 46-47. Marie-Elaina works as a secretary at her husband's catering business. *Id.* ¶ 45. She is unsure she can manage the business on her own and is concerned that it may be forced to close if DiMattina is incarcerated. *Id.* ¶ 47. If so, she—and the many currently employed by the defendant—will have to find new jobs in a difficult economic climate.

A sentence of one year and one day reflects the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). Under § 3553(a)(2)(B), there are two major considerations: specific and general deterrence. General deterrence is satisfied with the sentence imposed. The sentence will send a clear message that any involvement in extortion will result in a substantial prison sentence. Specific deterrence is achieved through incapacitation and the impact of this conviction on the defendant's business, his family, and his future employability. It is unlikely that he will engage in further criminal activity in light of his family and work circumstances.

While the total sentence is excessive in view of the criteria mandated by 18 U.S.C. § 3553(a), it is required by 18 U.S.C. § 924(c)(1)(A)(i) and case law.

### C. Fine, Special Assessment, and Supervised Release

A total fine of $10,000 on both counts suffices in view of the defendants' strained economic status and the trouble his family will have maintaining themselves while he is

incarcerated. A \$200 special assessment is imposed. Three years of supervised release on both counts provide adequate protection for the community and sufficient general and specific deterrence.

## V. Release Pending Appeal Is Warranted

### A. Power of District Courts to Grant Release Pending Appeal

#### 1. Statutory Language

The court may only stay a sentence of imprisonment if the defendant is released pending appeal. *See* Fed. R. Crim. P. Rule 38(b)(1) ("If the defendant is released pending appeal, the court must stay a sentence of imprisonment."); *see also* Fed. R. Crim. P. Rule 58(g)(3) ("Rule 38 applies to a stay of a judgment of conviction or sentence. The court may release the defendant pending appeal under the law relating to release pending appeal from a district court to a court of appeals.").

Federal law significantly limits the ability of defendants to secure release pending appeal. It establishes a presumption that *all* criminal defendants will be held in custody during this period. 18 U.S.C. § 3143(b)(1) ("[T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained [pending appeal]" unless certain findings are made.).

In carving out limited exceptions to this general rule, distinguished are two categories of crimes. *See* 18 U.S.C. § 3143. Defendants convicted of crimes not listed in 18 U.S.C. § 3142(f)(1)(A), (B), and (C) may be released if the defendant can show:

18

(A) by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

By contrast, defendants found guilty of crimes encompassed by 18 U.S.C. § 3142(f)(1)(A), (B), and (C)—crimes of violence, offenses with maximum sentences of life in prison or death, and drug offenses carrying maximum sentences of ten or more years—"shall . . . be detained." 18 U.S.C. § 3143(b)(2) ("The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained."); 18 U.S.C. § 3142(f)(1)(A) (requiring detention hearings in cases that involve a crime of violence). The statute, by its own terms, does not create any exceptions for such defendants. Nor does it reference any other statutes which do so.

A different statute, 18 U.S.C. § 3145, appears to offer an avenue for relief. By its own terms, 18 U.S.C. § 3145 relates to "[r]eview and appeal of a release or detention order." *Id.* It provides, in relevant part:

(c) Appeal from a release or detention order.--An appeal from a release or detention order, or from a decision denying revocation or amendment of such an

19

order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. *A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.*

*Id.* (emphasis added). A "judicial officer" is defined elsewhere as, "*unless otherwise indicated,* any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure, to detain or release a person before trial or sentencing or pending appeal in a court of the United States, and any judge of the Superior Court of the District of Columbia." 18 U.S.C. § 3156(a) (emphasis added). The additional statutes referenced, 18 U.S.C. § 3731 and 28 U.S.C. § 1291, both relate to appellate jurisdiction. *See* 18 U.S.C. § 3731 (describing when and where an appeal by the United States in a criminal case lies); 28 U.S.C. § 1291 (granting "jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court" to the courts of appeals).

## 2. **Legislative History**

Both 18 U.S.C. § 3143(b)(2) and 18 U.S.C. § 3145 were enacted as part of the Crime Control Act of 1990. *See* Crime Control Act of 1990, Pub. L. No. 101-647, § 902, 104 Stat. 4826, 4827 (1990). Senator Paul Simon, its drafter, indicated that the purpose of his amendment was "to prevent the release, on bond, of a convicted defendant who is awaiting sentencing or appeal." *United States v. Garcia*, 340 F.3d 1013, 1017 n.4 (9th Cir. 2003) (citing Letter from Senator Paul Simon to Assistant Attorney General Edward Dennis (June 26, 1989)). As Senator Simon explained on the floor of Congress:

> *There is simply no reason that an individual convicted of a violent crime or*
> *serious drug trafficking offense should be back on the street. . . .*
>
> . . . .
>
> . . . My bill prevents these defendants from reentering the community where they
> pose a danger and can commit further offenses and is especially important in
> protecting the victims of these serious crimes. . . . Unlike the pretrial detention
> setting in which the presumption of innocence creates a need for flexibility in
> setting bail, *there is little need for judicial discretion to release those who have*
> *been found guilty.*"

Jonathan S. Rosen, *An Examination of the "Exceptional Reasons" Jurisprudence of the*

*Mandatory Detention Act: Title 18 U.S.C. §§ 3143, 3145(c),* 19 Vt. L. Rev. 19, 22-23 (1994)

(citing 135 Cong. Rec. S15,202 (daily ed. Nov. 7, 1989) (statement of Sen. Simon)) (emphasis

added). His intention was to curb the power of the judiciary to release those convicted of violent

crimes.

Notably, the original version of the statute "stated that the exceptional reasons issue could

be addressed 'by a court of appeals or a judge thereof.'" Rosen, *supra,* at 27 n.41 (citing 136

Cong. Rec. S6,491 (daily ed. May 17, 1990) (Section 1152—Mandatory Detention)). This

language was later replaced by the words "judicial officer." It is unclear why this change was

made.

### 3. **Interpretations by Other Courts of Appeals**

Courts of appeals in other circuits have held that 18 U.S.C. § 3145 permits district courts

as well as appellate courts to release a defendant convicted of a violent crime pending appeal if

exceptional reasons are shown. *United States v. Christman,* 596 F.3d 870, 870-71 (6th Cir.

2010); *United States v. Goforth,* 546 F.3d 712, 714-16 (4th Cir. 2008); *Garcia,* 340 F.3d at 1014

n.1; *United States v. Cook*, 42 Fed. Appx. 803, 804 (6th Cir. 2002); *United States v. Jones,* 979

F.2d 804, 805-06 (10th Cir. 1992) (per curiam); *United States v. Herrera-Soto*, 961 F.2d 645,

647 (7th Cir. 1992) (per curiam); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) (per

curiam); *cf. United v. Mostrom*, 11 F.3d 93, 94-95 (8th Cir. 1993) (per curiam) (quoting the

district court's reasoning, which relied on *Carr*); *United States v. Weiner*, 972 F.2d 337, at *3

(1st Cir. 1992) (stating that "district courts have wide discretion in deciding whether to invoke"

18 U.S.C. § 3145). *But see United States v. Rausch*, 746 F. Supp. 2d 1192, 1195 (D. Colo. 2010)

(holding that district courts do not have the power to grant release under 18 U.S.C. § 3145(c));

*United States v. Cochran*, 640 F. Supp. 2d 934 (N.D. Ohio 2009) (same); *United States v.

Harrison*, 430 F. Supp. 2d 1378 (M.D. Ga. 2006) (same); *In re: Sealed Case*, 242 F. Supp. 2d

489 (E.D. Mich. 2003) (same); *United States v. Nesser*, 937 F. Supp. 507 (W.D. Pa. 1996)

(same); *United States v. Bloomer*, 791 F. Supp. 100 (D. Vt. 1992) (same); *United States v.

Salome*, 870 F. Supp. 648 (W.D. Pa. 1994) (same).

In the first of these court of appeals cases, *Carr*, the Fifth Circuit rested its holding on the

statute's use of the broad term "judicial officer," which "encompasses both lower courts and

courts of appeal." *Carr*, 947 F.2d at 1240; *see also Herrera-Soto*, 961 F.2d at 647 (noting that

"[s]ection 3143(a)(2) and (b)(2) use the term 'judicial officer' when referring to the individuals

initially ordering such mandatory detention"). It also argued that the fact that 18 U.S.C. § 3143

and 18 U.S.C. § 3145 were both passed in the same bill indicates that the latter was "designed to

provide an avenue for exceptional discretionary relief" from the former. *Carr*, 947 F.2d at 1240;

*see also Herrera-Soto*, 961 F.2d at 647.

The overwhelming majority of the court of appeals decisions that followed simply cited

*Carr* rather than carefully and independently analyzing the language of the statute itself.

*Herrera–Soto*, 961 F.2d at 646; *Jones*, 979 F.2d at 806; *Mostrom*, 11 F.3d at 94; *Garcia*, 340

F.3d at 1014 n. 1; *Christman*, 596 F.3d at 870–71; *see also Nesser*, 937 F. Supp. at 509 ("[T]he

22

appellate opinions cited above either did not analyze the statutory language at all, or did so cursorily or conclusorily."). *But see Goforth,* 546 F.3d at 714–16 (engaging in a detailed analysis of the statutory text and legislative history and finding that district courts may grant release under 18 U.S.C. § 3145(c)).

These court of appeals cases, and the district court cases that followed them, are understandable in light of the many cruelties that would result from a contrary interpretation. If a district court is without power to grant release of a defendant who would otherwise be eligible for such relief, federal law mandates incarceration until a court of appeals decides to release him. Yet section 3145(c) presumes that incarceration of such defendants pending appeal would be unjust.

### 4. Second Circuit Case Law

The Court of Appeals for the Second Circuit has assumed that 18 U.S.C. § 3145(c) applies equally to district and appellate courts. *United States v. DiSomma,* 951 F.2d 494, 496 (2d Cir. 1991). In *DiSomma,* the defendant moved for release pending appeal of his conviction on charges of conspiring to obstruct commerce by robbery under the Hobbs Act (18 U.S.C. § 1951) in connection with a planned jewelry store theft. 951 F.2d at 495. After the government stipulated that DiSomma posed no threat of flight and no danger to the community, the trial court found that the appeal raised a substantial issue that might result in reversal of the conviction and that "exceptional reasons" justified release on conditions, ordering the defendant released pending appeal. *Id.* at 496. On appeal, discussion focused on whether exceptional circumstances existed permitting release of the defendant. In the course of its discussion, the court stated:

> While the language of section 3143(b)(2) compels detention, an exception permits release of mandatory detainees who meet the requirements for release under

23

> section 3143(b)(1), and 'if it is clearly shown that there are exceptional reasons
> why such person's detention would not be appropriate.' 18 U.S.C. § 3145(c).

*Id.* at 496. The court explained that "*the trial judge*" must determine whether there are

"exceptional circumstances making detention inappropriate," and cited *Carr*, as explained in a

parenthetical, for the proposition that the "exceptional reasons provision [is] to be applied on

original application despite inclusion of [the] provision 'in a section generally covering

appeals.'" 951 F.2d at 496 (emphasis added); *see also id.* at 498 ("[I]t is well within the *district*

*judge's discretion* to find that exceptional reasons allow release of the defendant [convicted of a

violent crime] pending appeal." (emphasis added)). It did not, however, directly confront the

issue of whether 18 U.S.C. § 3145(c) permitted district courts to grant relief pending appeal,

since the issue was not raised by either party. *See generally* Brief for the Appellee, *United States*

*v. DiSomma,* 951 F.2d 494 (2d Cir. 1991) (No. 91-1464), 1991 WL 11015451 (focusing on

whether "exceptional circumstances" were present in this case); Brief for the United States,

*United States v. DiSomma,* 951 F.2d 494 (2d Cir. 1991) (No. 91-1464), 1991 WL 11015450

(same).

After *DiSomma*, most district courts in the Second Circuit have found that 18 U.S.C. §

3145(c) permits them to grant release pending appeal. *E.g. United States v. Capanelli*, 263 F.

Supp. 2d 677, 678 (S.D.N.Y. 2003). *But see United States v. Chen,* 257 F. Supp. 2d 656

(S.D.N.Y. 2003) (Scheindlin, J.) (finding that *DiSomma* did not reach the issue of whether a

district court may not grant release from detention based on exceptional circumstances, and

holding that it does not). Judge Scheindlin's decision in *Chen* is persuasive and would be

followed in the instant case were it not for the implied holding of the Court of Appeals for the

Second Circuit in *DiSomma.*

24

### 5. **Plain Language and Legislative History Seems to Forbid Release by District Court**

Under the language of the statute, a district court should be found to be without power to grant relief from detention during appeal on the basis of exceptional circumstances. As indicated by the title of 18 U.S.C. § 3145(c) and the repeated references to appellate jurisdiction, the provision only applies to a "judicial officer" reviewing an "[a]ppeal from a release or detention order." (By contrast, subsections (a) and (b) of § 3145 deal with review of release and detention orders by a "magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court." 18 U.S.C. § 3145(a)-(b).) The context provided by the placement of the "exceptional reasons" provision within 18 U.S.C. § 3145(c) indicates a design to narrow the definition "judicial officer" to appellate judges. *But see Goforth,* 546 F.3d at 715 (The "placement of the 'exceptional reasons' language within § 3145(c)" is not by itself "sufficient to constitute the affirmative 'indication' required under § 3156(a)(1) in order to render its definition of 'judicial officer' inapplicable.").

While 18 U.S.C. § 3145(c) may have been intended to provide relief from mandatory detention in exceptional circumstances, it does not necessarily follow that Congress designed the provision to empower a district court to provide that relief. If Congress had aimed to do so, it could have incorporated or referenced the "exceptional reasons" provision into the contemporaneously amended 18 U.S.C. § 3143, which explicitly applies to district courts. By instead choosing to include the "exceptional reasons" provision in 18 U.S.C. § 3145, the statute appears to have expressed the contrary intent to limit the power to grant release of violent convicts to appellate courts.

The legislative history of the act does not indicate otherwise. The comments of Senator Simon demonstrate that the purpose of the act was to ensure that individuals convicted of violent crimes were incarcerated. Limiting the power to release to appellate courts arguably furthered this purpose.

Admittedly, § 3145(c)'s "original text stated that the exceptional reasons issue could be addressed 'by a court of appeals or a judge thereof.'" Rosen, *supra,* at 27 n.41 (citing 136 Cong. Rec. S6,491 (daily ed. May 17, 1990) (Section 1152—Mandatory Detention)). The fact that Congress substituted the broader term "by the judicial officer" in the final version of the act does not demonstrate a plan to broaden the power granted by 18 U.S.C. § 3145(c) to include district judges. The drafters may have thought that the context provided by the text of the statute was sufficient to narrow the definition. *But see Goforth,* 546 F.3d at 716 ("The substitution of the broader term 'judicial officer' indicates that Congress intended to include district judges among those who could grant 'exceptional reasons' relief.").

The language of other federal rules governing release bolsters the view that 18 U.S.C. § 3145 only applies to appellate courts. Federal Rule of Criminal Procedure Rule 46(c), which applies to district courts, states that only "[t]he provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal." Federal Rule of Appellate Procedure Rule 9(c) states that "[t]he court must make its decisions regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, *and 3145(c)*" (emphasis added).

### 6. Weight of Precedents Allowing Release Followed

As described above, the language and legislative history of 18 U.S.C. § 3145 would lead to the conclusion that this court is without power to release the defendant during his direct

appeal. The courts of appeals and district courts that find otherwise appear to have been misguided, as demonstrated by Judge Scheindlin's persuasive opinion in *Chen*. 257 F. Supp. 2d at 657 ("I am firmly convinced that section 3145 may not be used by district courts to override the bail decision mandated by section 3143.").

Nevertheless, because the Court of Appeals for the Second Circuit may continue its assumption in *DiSomma*, and because release is warranted in this case if a district court is empowered to grant bail, *see* Part V(B), *infra*, this court follows the weight of precedent and considers whether exceptional circumstances merit the release of the defendant pending appeal.

### B. Exceptional Reasons Merit Release

DiMattina's crime of conviction, extortion, is a crime of violence because one of its elements is actual or threatened "violence to any person or property." 18 U.S.C. § 1951(a). He thus falls within the ambit of 18 U.S.C. § 3143(b)(2). In order to merit bail relief, the defendant must show by clear and convincing evidence that he "meet[s] the requirements for release under section 3143(b)(1), and ' . . . there are exceptional reasons why such person's detention would not be appropriate.'" *DiSomma,* 951 F.2d at 496 (quoting 18 U.S.C. § 3145(c)). In effect, the court must make three findings in order to release the defendant pending appeal: 1) that the defendant is unlikely to flee or pose a danger to the community, 18 U.S.C. § 3143(b)(1)(A); 2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to less than the time already served, 18 U.S.C. § 3143(b)(1)(B); and 3) that there are exceptional reasons why the defendants' detention are not appropriate, 18 U.S.C. § 3145(c). The court finds that all three factors are satisfied. *See* Tr. of Sentencing Hr'g, Mar. 30, 2012.

27

### 1. 18 U.S.C. § 3143(b)(1) Factors Are Satisfied

Found, at the defendant's post-conviction bail hearing, was that he does not present a

danger to the community and will not flee. *See* Order, Doc. Entry 54, Jan. 6, 2012.  Moreover,

while a new trial is not warranted under Rule 33, it appears that, on appeal, the defendant may be

found to have been seriously disadvantaged in demonstrating his innocence due to the arguable

lack of an opportunity to present a substantial alibi.  Raised are significant questions that may

result in reversal on a number of possible grounds. *See* Tr. of Sentencing Hr'g, Mar. 30, 2012;

Def.'s Mem. of Law on Resp. to Court's Questions, Doc. Entry 77, Mar. 27, 2012 (noting

potential claims).

### 2. Case Presents Extraordinary Circumstances

Neither § 3145 nor its legislative history provide guidance in determining what are

exceptional circumstances sufficient to permit release of a defendant convicted of a crime of

violence pending appeal. *DiSomma,* 951 F.2d at 497.  As noted by the Court of Appeals for the

Second Circuit:

> The only useful historical document is a letter from the Justice Department to
> Senator Paul Simon, the sponsor of the Mandatory Detention for Offenders
> Convicted of Serious Crimes Act, proposing the "exceptional reasons" provision
> and suggesting two hypothetical situations where it might apply. *See* Letter from
> Assistant Attorney General Carol T. Crawford to Honorable Paul Simon (July 26,
> 1989) ("Crawford Letter"). In the first, an elderly man with lifelong community
> ties, convicted under the federal murder statute of the mercy killing of his wife,
> challenges the applicability of that statute to mercy killings, a question of first
> impression in the circuit. The second example posited a seriously wounded drug
> dealer whose appeal raised a novel search and seizure issue which could change
> the outcome of his trial. *Id.* at 2.

*Id.*  The letter indicates that the Justice Department viewed some combination of legal novelty

and personal circumstances as giving rise to "exceptional reasons" for release.  It is unclear from

the legislative record whether this opinion of the Department of Justice was adopted by Congress.

The Court of Appeals for the Second Circuit has provided equally limited guidance. In *DiSomma,* for example, the court noted that the likelihood of success on appeal, on its own, was not necessarily sufficient to merit release.

> [A]n unusual legal or factual question can be sufficient . . . to meet the test. On the other hand, a merely substantial question may be sufficient, *in the presence of one or more remarkable and uncommon factors,* to support a finding of exceptional reasons for the inappropriateness of detention. As in many things, a case by case evaluation is essential, and it is not our intention to foreclose district judges from the full exercise of discretion in these matters.

*DiSomma,* 951 F.2d at 497 (emphasis added). The court found exceptional circumstances in that case because the defendant mounted "a direct and substantial challenge on appeal to the factual underpinnings of the element of violence upon which his sole conviction stands or falls" and this element of violence also mandated his detention pending appeal. *Id.; see also United States v. Hartery,* 351 F. Supp. 2d 14, 17-18 (N.D.N.Y. 2005) (finding exceptional circumstance for release pending appeal where defendant convicted of being a felon-in-possession of a firearm only had the firearm to use in hunting, which the court considered "not an illegal purpose").

The Court of Appeals for the Second Circuit has indicated that personal hardships are also not, on their own, sufficiently exceptional to merit release. *See, e.g., United States v. Lea,* 360 F.3d 401, 403-04 (2d Cir. 2004) ("There is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination."); *see also United States v. Lippold,* 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001) (collecting cases and noting that "circumstances that are 'purely personal' do not typically rise to the level of 'exceptional' warranting release").

Yet the Court of Appeals for this circuit has also emphasized that the "test under §

3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether

a particular set of circumstances qualifies as 'exceptional.'" *Lea,* 360 F.3d at 403; *see also*

*DiSomma,* 951 F.2d at 498 ("[I]t is well within the district judge's discretion to find that

exceptional reasons allow release of the defendant [convicted of a violent crime] pending

appeal.").

District courts in this circuit have found that a combination of unique facts that include

personal factors may be so exceptional as to warrant release. *See, e.g., Lippold,* 175 F. Supp. 2d

at 540 ("[I]n combination with other factors, family circumstances may warrant release pending

sentencing pursuant to § 3145(c)."). They have relied on the following non-exclusive factors,

established by the Ninth Circuit, for determining whether exceptional reasons exist: "(1) whether

the defendant's criminal conduct was aberrational; (2) whether 'the defendant led an exemplary

life prior to his offense and would be likely to continue to contribute to society significantly if

allowed to remain free on bail'; (3) 'the nature of the violent act itself'; (4) the length of the

prison sentence; (5) whether prison would impose unusual hardships on a defendant due to

illness or injury; (6) the nature of a defendant's arguments on appeal; (7) whether 'the defendant

is exceptionally unlikely to flee or to constitute a danger to the community'; and (8) 'whether the

defendant was unusually cooperative with the government.'" *United States v. Reboux,* No. 5:06-

CR-451, 2007 WL 4409801, at *2 (N.D.N.Y. Dec. 14, 2007) (citing *Garcia,* 340 F.3d at 1019-

21); *see also United States v. Sabhnani,* 529 F. Supp. 2d 377, 382 (E.D.N.Y. 2007).

As already noted, the defendant has raised substantial questions that may merit relief on

appeal or collateral attack. These questions, combined with the defendant's "remarkable and

uncommon" personal circumstances, provide extraordinary grounds for release. *DiSomma,* 951

30

F.2d at 497. The defendant's criminal conduct is aberrant. Given his history of hard work and charitable contributions, if he is permitted to remain free on bail, he is likely to contribute to society significantly. In particular, his sole responsibility for his businesses—and for some sixty people they employ—argues against detention. *Sabhnani*, 529 F. Supp. 2d at 383 (finding exceptional reasons under § 3145(c) to release pending sentencing where defendant was "solely responsible for operating his business and has various employees who are dependent upon their jobs, salaries and benefits"); *but see United States v. Akefe*, No. 09 CR 196, 2010 WL 2899805, at *26 (S.D.N.Y. July 21, 2010) ("The need to run [a] business is a personal concern and is in no way a remarkable or uncommon factor, nor is it truly exceptional or 'out of the ordinary.'"). He is also exceptionally unlikely to flee in light of his significant family and business responsibilities.

It would be unfortunate to incarcerate the defendant for a year or more while his appeal pends if reversal follows or, alternatively, if there is an affirmance followed by a successful habeas petition. The present Gordian procedural knot pleads for a slash from the sword of justice, so that this court can provide a sensible solution of release pending appeal. Arguably, the rule of lenity permits the same conclusion in view of the ambiguity in the relevant statutes. While the defendant would necessarily be incarcerated following an affirmance by the Court of Appeals for the Second Circuit, a prompt habeas petition may be swiftly ruled on, limiting defendant's potentially inappropriate incarceration to a matter of days if the collateral attack is successful.

## VI.    Conclusion

Defendant's motion for a new trial is denied. A substantial sentence has been imposed. Bail pending appeal has been granted, with the court making the following findings: 1) the

defendant is unlikely to flee or pose a danger to the community, 18 U.S.C. § 3143(b)(1)(A); 2) the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial, 18 U.S.C. § 3143(b)(1)(B)(i)-(ii); and 3) there are exceptional reasons why the defendants' detention during appeal are not appropriate, 18 U.S.C. § 3145(c).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: August 2, 2012
       Brooklyn, New York

32